UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

           v.                                         16-CR-072-A

                                                 **DECISION AND ORDER**

IAN TARBELL,

          Defendant.
_____

This case is before the Court on several motions *in limine* filed by the Government.  *See* Docket Nos. 24 & 27.  For the reasons stated below, the Court grants the Government's motions in their entirety.[1]

## BACKGROUND

The facts relevant to the Government's motions *in limine* are straightforward.[2] The Government alleges that on February 18, 2016, the Defendant—a member of the Saint Regis Mohawk Tribe—was stopped by a Genesee County Sheriff's Deputy for traffic infractions in Pembroke, New York.  The Defendant, who was accompanied by his then-girlfriend, was driving a pickup truck with a U-Haul trailer attached.  After the Deputy inquired, the Defendant and his girlfriend reported that the trailer was carrying cigarettes.  The Defendant also told the Deputy that he was a Native American-licensed cigarette wholesaler, and that he was driving the cigarettes from the Akwesasne Reservation to the Seneca Nation.  The Government alleges that neither the Defendant

---

[1]  At oral argument on March 9, 2017, the Court indicated that it would first issue a brief ruling on the Government's motions *in limine*, and that the Court would issue a more detailed Decision and Order at a later date.  After due consideration, the Court no longer intends to issue a brief ruling.  Instead, this Decision and Order will constitute the Court's sole pretrial decision on the issues raised in the Government's motions.  However, this Decision and Order does not resolve the Government's request to introduce evidence related to the Defendant's prior conviction in the Northern District of New York.  The Court will resolve that motion in due course.

[2]  These facts are drawn from the criminal complaint (Docket No. 1) and the parties' pretrial briefing.

nor his girlfriend were able to produce bills of lading or other "proper documentation related to the legal transportation and sales of the cigarettes."  Docket No. 1 ¶ 8.

The Defendant then consented to a search of his trailer.  Inside were 90 master cases of cigarettes (each of which contained 50 bags of "rollie" cigarettes),[3] plus four more bags of rollie cigarettes.  In total, the Defendant's trailer contained approximately 900,800 cigarettes.  None had a New York State cigarette tax stamp on its packaging.

A federal grand jury ultimately charged the Defendant in a two-count indictment. *See* Docket No. 6.   Count 1 alleges that the Defendant violated the Counterfeit Cigarette Trafficking Act (CCTA), 18 U.S.C. § 2341, *et seq.*, which, in relevant part, makes it a crime for "any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes."  18 U.S.C. § 2342(a).  With several exceptions not relevant here, the CCTA defines the term "contraband cigarettes" to mean "a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes."  18 U.S.C. § 2341(2).  Count 2 of the indictment charges that the Defendant, "with intent to defraud the United States," refused and/or attempted "to evade and defeat" the federal excise tax imposed on cigarettes manufactured in the United States, in violation of 26 U.S.C. § 5701(b)(1) and § 5762(a)(3).

---

[3]   According to the Government, a "rollie" cigarette is an "untaxed cigarette[] that bear[s] no stamp, impression or other indication to indicate the payment of cigarette taxes."  Docket No. 39 at 2.  A rollie cigarette "usually contain[s] no labels or packaging material that would identify the manufacturer, distributor or wholesaler of the cigarette[]."  *Id.* at 2-3.

**DISCUSSION**

The Government has filed a motion *in limine* concerning the CCTA's scienter element.   The Government also moves to preclude the Defendant from making arguments based on the fact that the cigarettes at issue were produced on a Native American reservation and were, at the time they were seized, bound for another reservation.  The Court addresses each motion in turn.

### 1.  The CCTA's scienter element

As noted, the CCTA makes it a crime to "knowingly . . . ship, transport, receive, possess, sell, distribute or purchase contraband cigarettes."  18 U.S.C. § 2342(a).  The question raised by the parties' briefing is whether, to obtain a conviction under the CCTA, the Government must prove that the Defendant knew the cigarettes he possessed were illegal under New York Tax Law or whether, instead, the Government need only prove that the Defendant knew the physical characteristics of the items he possessed.

The caselaw on this question strongly supports the Government.  The Second Circuit has not addressed this issue in detail, but it has summarily rejected as "meritless" the argument that "the CCTA require[s] the government to show that [a defendant] had knowledge that he was selling 'contraband' cigarettes."  *United States v. Morrison*, 686 F.3d 94, 107-08 (2d Cir. 2012).  A number of other courts of appeals have similarly held, in more detailed opinions, that the CCTA is a general intent crime. For instance, the Ninth Circuit has interpreted the CCTA's scienter element to require the Government to prove that the Defendant "knew the physical nature of what he possessed."  *United States v. Baker*, 63 F.3d 1478, 1491 (9th Cir. 1995).   Thus,

according to the Ninth Circuit, to obtain a conviction under the CCTA the Government need not prove that a defendant "knows his conduct violates the law." *Id.* at 1493. The Sixth Circuit has likewise held that, to obtain a conviction under the CCTA, the Government must prove that a defendant "knew the physical nature of what he possessed, a quantity in excess of [10,000] cigarettes which [bore] no evidence of the payment of applicable state cigarette taxes." *United States v. Elshenawy*, 801 F.2d 856, 859 (6th Cir. 1986) (first set of brackets added, second set in original, quotation marks omitted). And, finally, the Eighth Circuit recently agreed with the Sixth and Ninth Circuits that the word "knowingly" in the CCTA "'merely requires proof of knowledge of the facts that constitute the offense.'" *United States v. Nguyen*, 758 F.3d 1024, 1027 (8th Cir. 2014) (quoting *Bryan v. United States*, 524 U.S. 184, 192-93 (1998)).

In response, the Defendant points to the Supreme Court's opinion in *Cheek v. United States*, 498 U.S. 192 (1991). *Cheek* interpreted the word "willfully" in 26 U.S.C. §§ 7201 and 7203—both of which are criminal tax evasion statutes—to require that the Government, among other things, "negat[e] a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any of the provisions of the tax laws." *Id.* at 202. Relying on *Cheek*, the Defendant argues that, "[w]hile a good faith belief is not a defense in the assessment or collection of that tax, it[] is a defense to a criminal prosecution for the criminal charges." Docket No. 29 at 3-4. Specifically, the Defendant argues, the Government must prove "that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Id.* at 4.

4

*Cheek*'s reasoning does not support the Defendant's argument that the CCTA is a specific intent crime.  *Cheek*'s interpretation of the word "willfully" was premised on the fact that, given the size and complexity of the Internal Revenue Code (IRC), it may be "difficult for the average citizen to know and comprehend the extent of the duties and obligations imposed by the tax laws."  498 U.S. at 199-200.  In other words, Congress "'did not intend that a person, by reason of bona fide misunderstanding as to his liability for the tax . . . should become a criminal.'"  *Id.* at 200 (quoting *United States v. Murdock*, 290 U.S. 389, 396 (1933)).  The provisions of New York Tax Law regulating cigarettes, however, are not similarly "so complex as to create the danger of innocent violation." *Baker*, 63 F.3d at 1493 (interpreting the CCTA as applied to Washington State's cigarette tax).  The provision of New York Tax Law on which liability is based in this case is simple: "Whether taxable or tax-free, all cigarettes must bear a tax stamp." *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 160 n.8 (2d Cir. 2011).  *See also* New York Tax Law § 471(2).  The CCTA as applied in this case does not, then, present a risk of ensnaring an innocent wholesaler who cannot understand the vagaries of New York Tax Law.  As a result, *Cheek* has no relevance to the CCTA charge in this case. *Cf. City of New York v. Golden Feather Smoke Shop, Inc.*, No. 08-CV-03966(CBA)(JMA), 2013 WL 3187049, at *24 (E.D.N.Y. June 20, 2013) (rejecting reliance on *Cheek* in a civil CCTA enforcement action).

It is therefore irrelevant what the Defendant knew about the manner in which New York Tax Law taxes and regulates cigarettes.  That is, the Defendant's liability under the CCTA does not turn on whether he knew that the cigarettes he possessed were illegal under New York Tax Law.  Rather, his liability turns on whether he knew

that what he had in his trailer was more than 10,000 cigarettes that did not bear a New York tax stamp.  Thus, as to the CCTA's scienter element, the Court will instruct the jury that the Government must prove beyond a reasonable doubt that the Defendant "knew the physical nature of what he possessed"—not that he knew that "his conduct violates the law." *Baker*, 63 F.3d at 1491, 1493.  Further, because such evidence is irrelevant to Count 1, the Defendant is precluded from introducing evidence or arguing that Native Americans may lawfully possess or distribute cigarettes in New York State that do not bear New York State tax stamps.

## 2. New York State's alleged policy of nonenforcement of its cigarette tax laws

Next, the Government moves to preclude evidence or argument by the Defendant that New York State has an "alleged policy of non-enforcement of its tobacco laws."  Docket No. 24 at 6 (quotation marks omitted).  Specifically, the Defendant argues that "[a] state tax law that is not enforced can easily give rise to a common perception that one is not required to remit such taxes.  Such a law cannot be applied on someone who is engaging in what to the State of New York is a[] tolerated, if not accepted course of conduct, allowing him to believe it is legal conduct."  Docket No. 29 at 4-5.

The Second Circuit has rejected a similar defense to a CCTA charge on at least two occasions.  In *United States v. Kaid*, 241 F. App'x 747 (2d Cir. 2007), the defendants argued that New York's then-in-effect policy of not enforcing a State tax on on-reservation sales of cigarettes to non-Native customers meant that such cigarettes were not "contraband" under the CCTA.  *Id.* at 750.  The Second Circuit rejected this argument as "meritless," noting that "nothing in the record support[ed] the conclusion

that the state does not demand that taxes be paid when, as in [*Kaid*], massive quantities of cigarettes were purchased on reservations by non-Native Americans for resale."  *Id.*

Several years later, in *United States v. Morrison*, 686 F.3d 94 (2d Cir. 2012), the Second Circuit again rejected the argument that New York's non-enforcement of its cigarette tax on certain on-reservation sales was a defense to a CCTA charge.   In *Morrison*, the Second Circuit held that, regardless of whether New York State enforced its cigarette tax on certain types of cigarette purchases, liability under the CCTA is based on "what is mandated by the state statute  . . ., and not what is enforced by the state executive."  *Id.* at 105.   Thus, so long as the defendant had more than 10,000 cigarettes that were illegal under New York law, the cigarettes were "contraband" under the CCTA—no matter whether the New York State Department of Taxation and Finance actually enforced the relevant provision of New York Tax Law.

In this case, there is no question that New York Tax Law requires that the cigarettes the Defendant possessed bear a tax stamp.   This is true regardless of whether the cigarettes were intended for sale to Native or non-Native customers.  *See* New York Tax Law § 471(2) ("All cigarettes sold by agents and wholesalers to Indian nations or tribes or reservation cigarette sellers located on an Indian reservation must bear a tax stamp."); *Oneida Nation of New York*, 645 F.3d at 160 ("The amended [New York] tax law requires state-licensed stamping agents (*i.e.*, wholesalers) to prepay the tax and affix tax stamps to all cigarette packs, including those intended for resale to tax-exempt Indians."); *id.* n. 8 ("Whether taxable or tax-free, all cigarettes must bear a tax stamp.   Thus, tribal members will purchase stamped, albeit tax-free, cigarettes for personal use.")  *Cf. Grey Poplars Inc. v. One Million Three Hundred Seventy-One*

*Thousand One Hundred (1,371,100) Assorted Brands of Cigarettes*, 282 F.3d 1175, 1178 (9th Cir. 2002) ("[B]ecause Washington law requires that cigarettes destined for sale to Indians be pre-approved by the Washington State Department of Revenue, any cigarettes without such pre-approval are considered contraband under federal law if the quantity requirements are met.")

Thus, whether or not New York in fact enforces its tax stamp requirement in a case such as this one, New York law unequivocally required that the cigarettes the Defendant possessed bear a tax stamp.   The CCTA requires nothing more for the cigarettes to be considered "contraband," provided that the statute's 10,000-cigarette threshold is satisfied.   *See Morrison*, 686 F.3d at 105 ("[T]he normal meaning of 'required,' as contained in the CCTA, is what is mandated by the state statute (Section 471), and not what is enforced by the state executive.")   Thus, the Defendant is precluded from introducing evidence or arguing that New York State has not enforced its cigarette tax law in a situation such as the one at issue in this case.

### 3.  Federal taxation of Native American-manufactured cigarettes

The Government's final motion *in limine* seeks to preclude the Defendant from offering evidence that, "as a Native American, he is exempt from the federal taxation of cigarettes."   Docket No. 24 at 8.   This motion concerns Count 2, which charges the Defendant with violating 26 U.S.C. § 5701(b)(1)—which imposes an excise tax of $50.33 per thousand cigarettes—and 26 U.S.C. § 5762(a)(3), which, in general, makes it a crime to not pay that tax.   Specifically, § 5762(a)(3) makes it a crime for a person, "with intent to defraud the United States," to "[r]efuse[] to pay any tax imposed by this

chapter,[4] or [to] attempt[] in any manner to evade or defeat the tax or the payment thereof."

The cigarettes the Defendant possessed are subject to the federal excise tax on cigarettes.  This is true despite the fact that the Defendant is a member of the St. Regis Mohawk Tribe.  It is also true despite the fact that the cigarettes appear to have been manufactured on the Akwesasne Reservation.  "In the absence of a clear expression to the contrary, general acts of Congress apply to Indians, like all other citizens.  As the Supreme Court held in *Squire v. Capoeman*, 351 U.S. 1, 6 (1956), Indians 'are subject to the payment of income taxes as are other citizens.  To be valid, exemptions to tax laws should be clearly expressed.'  Although this general rule was applied specifically to income tax, the rule applies equally to the federal excise tax in question." *Cook v. United States*, 86 F.3d 1095, 1097 (Fed. Cir. 1996) (citation, ellipsis, and brackets omitted) (holding that sales of diesel fuel by Native American retailers are subject to federal excise tax on diesel fuel).  Nothing in 26 U.S.C. § 5701(b)(1) or Chapter 52 of the IRC suggests—much less "clearly expresse[s]," *Squire*, 351 U.S. at 6—that cigarettes manufactured on a Native American reservation are exempt from the federal excise tax on cigarettes.[5]  Thus, the Defendant may not argue that the cigarettes he possessed were not subject to federal excise tax.

---

[4]  The term "this chapter" in § 5762(a)(3) refers to Chapter 52 of the Internal Revenue Code.  Among other things, Chapter 52 imposes a tax on cigars, cigarettes, cigarette papers, cigarette tubes, and various tobacco products.

[5]  To the contrary, Chapter 52 of the IRC contains the same broad language—"any person"—that the Federal Circuit has held subjects Native Americans to the federal excise tax on diesel fuel.  *See Cook*, 86 F.3d at 1097 ("The Court of Federal Claims properly found that 'any person' includes Onondaga Indians.") *See* 26 U.S.C. § 5702(d) ("'Manufacturer of tobacco products' means *any person* who manufactures cigars, cigarettes . . .") (emphasis added); *id.* § 5703(a)(1) (imposing liability for cigarette excise tax on "[t]he manufacturer . . . of tobacco products").

Count 2, however, requires the Government to prove that the Defendant acted "with intent to defraud the United States."  26 U.S.C. § 5762(a).  The Court agrees with the parties that the Defendant will therefore be permitted to offer evidence as to whether he acted with that intent.  *See* Docket No. 24 (Gov't Br.) at 9; Docket No. 29 (Def. Br.) at 4.

## CONCLUSION

For the reasons stated above, the Government's motions *in limine* (Docket Nos. 24 & 27) are granted in their entirety.  In due course, the Court will issue a decision resolving the Government's motion to introduce evidence related to the Defendant's prior conviction in the Northern District of New York.

**SO ORDERED.**

Dated: March 10, 2017          ___*s/Richard J. Arcara*_____
    Buffalo, New York          HONORABLE RICHARD J. ARCARA
                        UNITED STATES DISTRICT JUDGE